UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A. CALVIN BROWN, et al.,

Plaintiffs,

v.

T. MICHAEL DUNBAR, et al.,

Defendants.

C07-82Z

ORDER

This matter comes before the Court on Defendant City of Auburn's and Defendants Joiner and Dunbar (collectively "Auburn Defendants") Motion for Summary Judgment on Remaining Claims, docket no. 133. Having considered the briefs and declarations in support of and opposition to the motion, the Court now GRANTS IN PART and DEFERS IN PART Defendant City of Auburn's motion for summary judgment as follows.

**BACKGROUND**

A number of residents of the City of Auburn (the "City") have jointly filed a complaint alleging that the City's zoning code enforcement officers and the State of Washington's Department of Social and Health Services ("DSHS") employees are misusing

ORDER 1–

their positions to threaten, harass, and steal from Plaintiffs, and to interfere with Plaintiffs' business relationships. Plaintiffs can be divided into distinct groups[1]:

  A. A. Calvin Brown – alleges harassment over use of a tarp to cover his truck and his construction of a shed. Second Am. Compl., docket no. 56, ¶¶ 11-15;

  B. Kim and Monty Konold – allege harassment over their renting of an empty lot for parking and their construction of a flood wall in response to the City's paving of an alley. Second Am. Compl. ¶¶ 16-18;

  C. Danny and Barbara Englander – allege harassment regarding the erection of fences. Second Am. Compl. ¶¶ 19-26;

  D. Robert Arehart and Lowell Christian – allege unlawful interference with their recycling business. Second Am. Compl. ¶¶ 27-31.

Plaintiffs seek a declaratory judgment that Defendants violated Plaintiffs' First and Fourteenth Amendment rights, and that Defendants violated 42 U.S.C. §1983. Second Am. Compl. ¶ A.

The motion currently before the Court requests summary judgment in favor of Defendants as to the claims of Brown, Konolds, Englanders, Arehart, and Christian. These claims allege Due Process violations, Fourth Amendment violations, and Interference with Right to Contract by Defendants Joiner and Dunbar through their actions as code enforcement officers.

  **1.**  **Brown Claims**

Plaintiff Brown's claims arise from two interactions with Defendants Dunbar and Joiner. Mr. Brown had a tarp structure that sheltered his truck while it was parked in his

---

[1] Two additional groups of Plaintiffs are present but not the subject of the current motion: Diana Pogacsas, who alleges that her daycare license was wrongfully revoked and that "for rent" signs were stolen from her property, and Minors D.C., J.M., L.M., and parents Arianne Collman, Clara Evans, Ryan Morey, who allege that D.C. was illegally seized when questioned, and that the revocation of the daycare licensed deprived them of their rights of association, privacy, and parental decision making.

ORDER   2–

driveway located on C Street in Auburn. Ward Decl., docket no. 162, ex. 4 at 6. Mr. Brown alleges Mr. Dunbar yelled and threatened him with "criminal action and jail," after Mr. Brown told Mr. Dunbar the tarp was legal and necessary. Id. Mr. Dunbar issued a "Notice to Correct Violation" for the structure because Mr. Dunbar believed it was illegally placed within the setback. Id.; Joiner Decl., docket no. 136 ex. 1, at 5-6. Mr. Dunbar also contacted the property owner, Mr. Roberts, who gave notice to Mr. Brown that he was required to remove the structure. Joiner Decl., ex. 1, at 5-6. Mr. Brown removed the tarp structure when he moved to another Auburn location on 19th Street. Id.; Ward Decl., ex. 10, at 2. Mr. Dunbar then received a complaint about Mr. Brown's new 19th street location regarding the same tarp structure and the construction of a new shed. Joiner Decl., ex. 1 at 8. Mr. Dunbar photographed the site and then the case was transferred to Defendant Joiner. Id. A stop work order was posted on the structure and when Mr. Joiner noticed it had been removed, he spoke with Mr. Brown about the penalties for removal and helped Mr. Brown repost the order. Id., at 10. Mr. Joiner eventually issued two infractions regarding the structures. Id., at 10-12. The infractions were handled by Auburn Assistant City Attorney Joseph Beck. Beck. Decl., docket no. 139, ¶ 3. At trial in Auburn Municipal Court, Mr. Brown moved to dismiss for failure to consider his request for reconsideration. Id., ¶ 4. The motion to dismiss was granted and the charges were dismissed with prejudice. Id.

**2. Konold Claims**

Plaintiffs Kim and Monty Konold ("the Konolds") rented a small lot near their home where they parked vehicles. Ward Decl., ex. 10 at 6. Defendant Joiner purchased a property near the Konolds, and he began what Plaintiffs describe as harassing them and other neighbors, including yelling at the Konolds' minor children. Id. According to Plaintiffs, Mr. Joiner ordered the Konolds to cease parking on the lot and threatened the lot owner with citations and frequent visits unless he stopped renting to the Konolds. Id. Plaintiffs allege an on-going harassment including threat of arrest and other repercussions for the Konolds

ORDER 3–

and the Konolds' landlord.  Id.  Defendants allege that Mr. Joiner was responding to neighbor complaints.  Joiner Decl., ¶ 5.

### 3. **Englander Claims**

Plaintiffs Danny and Barbara Englander ("the Englanders") built a five-foot high fence along the front of their property to prevent access to a pond in the front yard.  Ward Decl., docket no. 162, ex. 12.  An Auburn City Council member complained to the code enforcement department about the height of the fence.  Joiner Decl., at 66 (case report).  The Englanders allege, and the City disputes, that they were informed by the Auburn City Planning Department that a five-foot fence was allowed.  Englander Decl., at 6; Tinner Decl., docket no. 140.  Several months later, Defendant Dunbar ordered the Englanders to reduce the height of the fence to four feet to comply with the code for front-yard fences.  Eventually, the Englanders lowered the fence height.  Mr. Dunbar later returned and ordered the Englanders to move and reduce the height of the side fences.  The Englanders did not comply with this request and shortly thereafter filed this complaint.

### 4. **AAA Recycling Claims**

Plaintiffs Arehart, Christian and AAA Recycling ("AAA") moved their recycling business to a new location in Auburn.  McConaughty Decl., docket no. 134, ex. E at 35-36.  On moving to the new location, AAA was asked to obtain a new business permit.  Id.  The City informed AAA that the new location was not zoned for a recycling business.  Id., at 37.  AAA was given a list of items that would need to be fixed before the City would issue a business license, although AAA argues that between the time they were verbally given the list and when a written copy was sent to them, several expensive items had been added including building a new building and adding an oil/water separator.  Id., at 38.  AAA was not able to complete all the items on the list.  Id.  AAA alleges that as they neared completion of the requirements, the City added more requirements, that many of the changes

ORDER 4–

were not required by code, and that code enforcement officers continually trespassed and harassed them. Ward Decl., ex. 14 at 6. AAA relocated out of Auburn as a result. Id.

**Discussion**

    **A.**    **Summary Judgment Standard**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rest upon the mere allegations or denials" of its pleadings. Fed. R. Civ. P. 56(e). The non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party cannot create a genuine issue of fact by simply contradicting his or her own previous sworn statement. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).

To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Anderson, 477 U.S. at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. See Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 932 (9th Cir. 2006); see also Beard v. Banks, 126 S. Ct. 2572, 2578 (2006).

    **B.**    **Qualified Immunity**

Defendants Joiner and Dunbar assert that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."

ORDER 5–

Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted). When a qualified immunity defense is raised, the court should rule on the issue to avoid the costs and expense of trial where the defense is dispositive. Saucier v. Katz, 522 U.S. 194, 200 (2001).

The first step in a qualified immunity analysis is determining whether the facts taken in the light most favorable to the party asserting the injury show that a constitutional injury has occurred. Id. The party asserting the injury may not rest on an extremely abstract definition of the constitutional right. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987) ( holding that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092 (9th Cir. 1998). The party asserting the injury also bears the burden of showing that the rights alleged to be violated were clearly established. Hufford v. McEnaney, 249 F.3d 1142, 1148 (2001).

### 1. Due Process

Plaintiffs Brown, Konolds, Englanders and AAA frame the primary constitutional question at issue as to whether Defendants could deprive Plaintiffs of property without a pre-deprivation hearing. Pls.' Response, docket no. 161, at 4, 11-12. Plaintiffs contend that each plaintiff acted lawfully and that "[b]ecause the city's ordinances permit the deprivation of property without a hearing before deprivation, the ordinance is unconstitutional." Id. at 4.

Plaintiffs cite Bell v. Burson, 402 U.S. 535 (1971), for the proposition that a pre-deprivation hearing is required to allow a plaintiff to challenge the impairment of his own use of his property. In Bell, Georgia law required a motor vehicle driver, in the event of an accident, to show insurance or post a bond in order to avoid revocation of his driver's license. Id. at 539. The Court held that a pre-deprivation hearing was required before Georgia could revoke an issued license. Id. Bell is not applicable to this case, however, because "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews v. Eldridge, 424 U.S. 319, 334

ORDER 6–

(1976) (citations omitted). Driver's license revocation and zoning notices are very different deprivations, and it does not follow that because a driver's license revocation requires a pre-deprivation hearing, a zoning notice requires a pre-deprivation hearing. See id. (holding that the amount of due process required varies depending on the interests at stake). Plaintiffs have not provided any other case law supporting the proposition that a pre-deprivation hearing is required prior to a code enforcement officer issuing a stop work order or a notice to correct violation. Plaintiffs have failed to show that a constitutional injury has occurred with respect to the notices to correct violations or the stop work orders because they have not shown that a pre-deprivation hearing was required.

Mr. Brown was also issued citations. Beck Decl., ¶ 3. Mr. Brown moved to dismiss the citations on the basis that when he asked for reconsideration of the Notice to Correct Violations, the city was obligated to stay enforcement and respond to the request. Id., ¶ 4. The motion was granted. Id. Mr. Brown was therefore provided with a hearing prior to any deprivation, and no constitutional injury occurred as to plaintiff Brown relating to the citation.

### 2. Selective Enforcement/Retaliation under Due Process and Equal Protection

Plaintiffs cite a number of cases for the proposition that the animosity and retaliatory motivations of the zoning enforcement actions of Mr. Dunbar and Mr. Joiner give rise to a Due Process Claim.[2] Plaintiffs cite P.B. v. Koch, 96 F.3d 1298, 1301 (9th Cir. 1996), and Duran v. Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990), for the proposition that Government action violates due process when it is motivated by bias, personal or improper motives, or bad faith. In P.B., a principal used excessive force on students and such force was admittedly unlawful at the time it was administered. P.B., 96 F.3d 1298. In Duran, a police

---

[2] Defendants, in their reply, docket no. 163, raise the defense of absolute immunity on behalf of the assistant city attorney. The assistant city attorney is not named in the second amended complaint, docket no. 56. The Court STRIKES this motion on his behalf as moot.

ORDER  7–

1  officer arrested a driver for making an obscene gesture at the police officer. Duran, 904 F.2d
2  1372. In both of those cases, the government official had no lawful reason for taking the
3  action. Here, Defendants have offered evidence showing that the notices and stop work
4  orders were based on valid violations of the code and Plaintiffs have failed to offer any
5  admissible evidence that the conditions at Plaintiffs' properties did not violate the code. See
6  Joiner Decl. On these facts and the case law presented by Plaintiff, Plaintiff has failed to
7  show a Due Process violation.

8  Selective enforcement may also give rise to an Equal Protection Claim. Squaw Valley
9  Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (overruled on other grounds). A
10 city may violate Equal Protection when it intentionally treats an individual differently than
11 similarly situated individuals and there is no rational basis for such treatment. Village of
12 Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "Although selective enforcement of valid
13 laws without more does not make the defendants action irrational, there is no rational basis
14 for state action that is malicious, irrational or plainly arbitrary." Squaw Valley Dev. Co.,
15 375 F.3d at 944. Plaintiffs allege that Defendants engaged in overzealous enforcement after
16 Plaintiffs had taken actions that angered Defendants, such as complaining to the media about
17 Defendants, and argue that the undisputed timeline of events supports a view that
18 enforcement actions were taken for retaliatory or malicious motives. Defendants argue that
19 the qualified immunity doctrine is an objective standard that eliminates any need to look at
20 the subjective motivations of Defendants. Defendants' view of the law that subjective
21 motivation never matters does not comport with Squaw Valley.

22 A plaintiff may pursue an Equal Protection claim by raising a triable issue of fact as to
23 whether the defendants' asserted rational basis was merely a pretext for differential
24 treatment. Id. (citations omitted). "On summary judgment, an equal protection plaintiff may
25 show pretext by creating a triable issue of fact that either: (1) the proffered rational basis was
26

ORDER  8–

objectively false; or (2) the defendant actually acted based on an improper motive." Id., at 946.

As to the first prong of the Squaw Valley test, Plaintiffs "assert that they have not violated any code." Pls.' Response at 6. However, they offer no evidence to contradict the specific allegations of the enforcement actions, and consequently have not shown that the proffered rational basis, actual violations of the zoning code, was objectively false.

As to the second prong, Plaintiffs argue that Defendants actually acted on an improper motive. However, in order to prevail on this claim, it is not enough that a plaintiff show that they didn't like the enforcement methods, but instead a plaintiff must show that the conduct was motivated by animus and this animus must be the cause of the disparate treatment. Id., at 948. Although Plaintiffs dispute that the enforcement actions were not the result of personal animosity and merely the result of neighbor complaints, they do not present any evidence to contradict Defendants' evidence that all but one of the enforcement actions were started by neighbor complaints.[3] Additionally, Plaintiffs do not offer any evidence of enforcement actions in which the alleged animus was missing and a different course of action was taken by enforcement officers.

Because Plaintiffs have not shown that the rational basis for the code enforcement actions were objectively false and because Plaintiffs have not shown that Defendants actually acted based on an improper motive, the Court holds that Defendants Joiner and Dunbar are entitled to qualified immunity with respect to the code enforcement actions against Plaintiffs Brown, Kim and Monty Konold, Danny and Barbara Englander, Arehart, and Christian and GRANTS summary judgment on this issue.

---

[3] The Joiner Declaration indicates that all investigations except one were opened as a result of complaints received. The one exception is the Case Report opened June 29, 2007 on page 27 of the declaration which shows that one of the enforcement actions at the Konolds began after Mr. Joiner noticed what he considered to be a violation while responding to an unrelated matter. Joinder Decl. at 27.

ORDER  9–

### 3. Fourth Amendment/Trespass

Plaintiffs also allege that Defendants trespassed onto Plaintiff Brown's property and that this trespass was a 4th Amendment violation. Pls.' Response, at 17. Defendants do not address this constitutional violation in either the motion or the response. The Court DEFERS decision on this issue and Defendants may respond to Plaintiffs' motion on this issue in the supplemental briefing requested below.

### 4. Interference with Contract Rights

Plaintiffs also allege that Defendants Joiner and Dunbar interfered with Mr. Brown's right to contract by telling Mr. Brown's landlord to evict him, and that Defendants interfered with the Konolds' right to contract by harassing the lessor of the lot they used to park their vehicles. Plaintiffs cite Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923) for the proposition that when the State limits the right to contract in some manner even within the normal police powers of the State, courts must provide supervision. Pls.' Response at 18. The Meyer court cited Lochner v. New York, 198 U.S. 45, (1905), among other cases for support of this position and the very language quoted in Plaintiffs' brief is cited to Lochner. Meyer, 262 U.S. at 399. The Lochner line of cases are no longer controlling law for the constitutional protections regarding the right to contract. See, e.g., Ferguson v. Skrupa, 372 U.S. 726, 730 (1963) ("The doctrine that prevailed in Lochner, Coppage, Adkins, Burns, and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded.") Plaintiffs do not address why Meyer is still controlling law. The Court concludes as a matter of law that Plaintiffs have failed to state a constitutional violation with respect to the right to contract.

### C. Custom, Policy, Practice

In order to hold the City responsible for the actions of the code enforcement officers, Plaintiffs must show that the officers' actions were the result of some custom, policy, or practice of the City. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Plaintiffs

ORDER   10–

request more discovery in order to prove a custom, policy, or practice and have submitted a declaration indicating that they have a number of witnesses who would testify as to the conduct of Mr. Joiner and Mr. Dunbar as well as the City's reaction.  Rempfer Decl., docket no. 162, ex. 2.  Defendants in their reply, docket no. 163 at 3, move to strike the Rempher declaration as based on hearsay.  The motion to strike is GRANTED.

The Plaintiffs have failed to present any admissible evidence of alleged retaliation.  The Rempher declaration was signed on February 24, 2008, and since that time Plaintiffs have failed to file any other evidence that "would support Plaintiffs' position on the issue of custom, policy, and practice."  Additionally, Plaintiffs filed this action in January, 2007, and have failed to provide any evidence relating to custom, policy, or practice.

A court is not obligated to search through all materials on file and a plaintiff must set forth facts in both the record and the response in order to avoid summary judgment.  Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).  Plaintiffs have pointed to no specific facts that they currently possess or may discover that would show any custom, policy, or practice on behalf of the City, and therefore the Court GRANTS Defendants' motion for summary judgment with respect to vicarious liability of the City of Auburn for the actions of the code enforcement officers.

**D.     Constitutionality of Auburn Zoning Code**

Plaintiffs argue that the Auburn Zoning Code is unconstitutional.  Plaintiffs contend the code is vague and that it fails to provide for a pre-deprivation hearing.  The briefing in this matter is not adequate to facilitate a resolution of this issue.  Plaintiffs may submit a supplemental brief not to exceed five (5) pages by April 25, 2008, that sets forth the particular challenged ordinances, limited to the ordinances affecting those plaintiffs at issue in this motion and the issues of vagueness of the ordinance and pre-deprivation hearing requirements.  Defendants may file a supplemental response, not to exceed five pages, by

ORDER   11–

May 2, 2008.  Defendants' response may also address Plaintiffs' 4th Amendment trespass claim.  Plaintiff may file a reply not to exceed five (5) pages by May 9, 2008.

### E.  **Plaintiffs' Motions to Strike**

Plaintiffs move to strike exhibits C, D, E, F, and G of the McConaughy declaration, docket no. 134.  The exhibits are deposition transcripts and Plaintiffs object because the transcripts are not authenticated by the court reporter and because Plaintiffs have not had an opportunity to correct them.  Defendants have provided authentication and letters indicating that Plaintiffs did have an opportunity to correct the transcripts.  Lott Decl., docket no. 167.  The Court DENIES this motion.

Plaintiffs move to strike the Joiner declaration, docket no. 136, as hearsay or self-serving and not created contemporaneously at or near the times of the events.  All of the records are likely to be admissible at trial under the business records exception because Mr. Joiner and Mr. Dunbar were under a business duty to maintain the records, or they may be admitted to refute the allegations of improper motivation and as such go to Defendants' subjective belief at the time.  Mr. Joiner states that the records were created at or near the time of each event.  Joiner Decl., ¶ 4.  Because the records are either not hearsay or alternatively allowable under the business records exception, the Court DENIES this motion.

Plaintiffs move to strike the Tinner declaration, docket no. 140, because the statements he makes are insufficient to refute Plaintiffs allegations and speculative.  Plaintiffs' objections are not a proper basis to strike a declaration and the Court DENIES this motion.

Plaintiffs move to strike the Lewis Declaration because the meeting described in the declaration was recorded by a court reporter and the record should have been produced.  Defendants dispute that a court reporter was present.  Defendants are unable to locate any record of the meeting and attendees do not recall any meeting at which a court reporter was present.  Second McConaughty Decl., ¶ 3-4.  The Court DENIES this motion to strike.

ORDER   12–

### F.     Defendants' Motion to Strike

Defendants move to strike Plaintiffs' exhibits that contain Plaintiffs' responses to discovery requests, e.g. Ward Decl., ex. 4 ¶ 15, on the basis that the responses do not identify which portions are made on personal knowledge. The discovery responses all contain boilerplate language that some of the responses are made on personal knowledge and some are not, and then go on to describe the individual plaintiff's description of their personal incident with defendants. At the end of the description of each plaintiff's incident, a number of other incidents are described which do not appear to be based on personal knowledge. The Court GRANTS IN PART Defendants' motion and STRIKES Plaintiffs' discovery responses that are not made on personal knowledge and DENIES IN PART the remainder of Defendants' motion. The Court also notes that Plaintiffs' discovery responses filed in conjunction with the response to the present motion are unsigned. Plaintiffs are ORDERED to re-file these papers with proper signatures within 10 days of this entry of this Order.

Defendants also move to strike the Rempher Declaration, docket no. 162-2, on the basis of hearsay. As explained above, this motion is GRANTED.

### CONCLUSION

The Court GRANTS Auburn Defendants' motion for summary judgment, docket no. 133, on the claims of Due Process violations as to Defendants Dunbar, Joiner, and the City of Auburn, because Plaintiffs have failed to show a constitutional violation. The Court GRANTS Auburn Defendants' motion for summary judgment, docket no. 133, on the claims of Equal Protection violations as to all Defendants. The Court GRANTS Auburn Defendants' motion for summary judgment, docket no. 133, on the claims of violations of the Right to Contract. The Court DENIES Plaintiffs' motion for more discovery, docket no. 161, and GRANTS Auburn Defendants' motion for summary judgment, docket no. 133, as to custom, policy, or practice. The Court DEFERS Auburn Defendants' motion for summary

judgment, docket no. 133, on the claims of 4th Amendment violations and unconstitutionality of the Auburn ordinances until supplemental briefing has been submitted on these issues.

The Court DENIES Plaintiffs' motion to strike declarations and exhibits, docket no. 161. The Court GRANTS IN PART AND DENIES IN PART Auburn Defendants' motion to strike, docket no. 163, and STRIKES the portions of Plaintiffs' exhibits that are not based on personal knowledge, STRIKES the Rempher declaration, docket no. 162-2, and DENIES the motion to strike remaining portions of Plaintiffs' exhibits.

IT IS SO ORDERED.

DATED this 16th day of April, 2008.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER   14–