UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A. CALVIN BROWN, et al.,

           Plaintiffs,

v.

T. MICHAEL DUNBAR, et al.,

           Defendants.

C07-82Z

ORDER

This matter comes before the Court on the State Defendants' Motion for Summary Judgment, docket no. 86 and Plaintiffs' Motion for Declaratory Judgment, docket no. 158. The Court has previously entered a Minute Order granting the State Defendants' Motion and denying the Plaintiffs' Motion. This Order explains the Court's reasoning.

**BACKGROUND**

    **1.**    **Parties and Issue**

This case involves two groups of plaintiffs. Plaintiffs Diana Pogacsas, End of the Rainbow Childcare, Clara Evans, Ryan Morey, Arianne J. Collman, D.C., J.M., and L.M. ("Daycare Plaintiffs"), allege that the State Defendants exceeded "constitutional authority and violate(d) the rights of the Plaintiffs" (see Second Amended Complaint at IV(B), docket no. 56), as a result of the suspension and later revocation of Ms. Pogacsas's daycare license. The remaining Plaintiffs, A. Calvin Brown, Kim Konold, Monty Konold, Danny Englander,

ORDER 1–

Barbara Englander, Lowell Christian, and Roberta A. Arehart ("Code Plaintiffs") allege the Auburn Defendants violated their constitutional rights when enforcing various building and zoning codes.

The State of Washington, the Department of Early Learning ("DEL"), the Department of Social and Health Services ("DSHS"), and DSHS employee Patricia Long are the "State Defendants," and the City of Auburn, and two code enforcement officers for the City of Auburn, T. Michael Dunbar and Charles Joiner, are the "Auburn Defendants."

The issues addressed in this Order relate solely to the State Defendants' Motion for Summary Judgment, docket no. 86, and the related Plaintiffs' Motion for Declaratory Judgment, docket no. 158.

The Daycare Plaintiffs contend that the Washington Statutory provisions of RCW 74.15 et seq. and WAC 388-296 are unconstitutional on their face and as applied in connection with the suspension and later revocation of Diana Pogacsas's daycare license in 2006. The Daycare Plaintiffs also contend that the suspension and revocation of the daycare license violated their rights of liberty, privacy, rights of association and due process.

After Plaintiff Pogacsas's license was revoked, Ms. Pogacsas filed an appeal with the Office of Administrative Hearings. In re Diana Pogacsas, case no. 05-2006-L-1141. That appeal challenges the State's decision to revoke the daycare license. No decision has been rendered by the State in connection with that appeal. The motions before the Court do not require a review of whether the suspension or revocation was proper or justified. Rather, only the constitutionality of the statute and WAC is at issue before this Court.[1]

---

[1] Plaintiffs object and move to strike (see Response, docket no. 143 at pg. 2) Exhibits A, B, C, E and F of the Tomisser Decl., docket no. 87. The Court GRANTS the motion to strike Exhibit F, an unsigned document which is not properly authenticated. The Court DENIES the motion to strike as to Exhibits A, B, C and E.

ORDER  2–

## 2. **Facts Relevant to Issues Presented**

Diana Pogacsas was a licensed daycare provider from 1995 through July 2006. Ward Decl., docket no. 159, Ex. B, ¶¶ 3, 11. Ms. Pogacsas was licensed to run a daycare at 422 - 2nd Street NE, Auburn, Washington. On or about April 1, 2006, Ms. Pogacsas relocated her daycare business to another house located at 111 - 16th Street SE, Auburn, Washington ("the 16th Street house"). Id. ¶ 12; Tomisser Decl., docket no. 87, Ex. A. The 16th Street house was owned by Plaintiff Pogacsas and occupied by her former husband, Steve Pogacsas. Ward Decl., docket no. 194, Ex. 11 at 7.

On April 5, 2006, Defendant Joiner, an Auburn Code enforcement officer, responded to a complaint that there was a daycare business at the 16th Street house.[2] Joiner Decl., docket no. 83, ¶ 7. Joiner talked to Plaintiff Pogacsas at that time and exactly what was said is in dispute. On or shortly after April 5, 2006, Joiner called the DSHS and discussed the apparent daycare business at the 16th Street house. Joiner learned Pogacsas did not have a daycare license for the 16th Street house and that Mr. Pogacsas (who was present on April 5, 2006 at the 16th Street house) was not supposed to have contact with daycare children.[3]

On or about April 7, 2006, Ms. Pogacsas applied for a business license to operate her daycare at the 16th Street house.

On April 11, 2006, Joiner mailed and posted a "Notice to Correction Violation" directing Ms. Pogacsas to immediately cease business operations until an Auburn business license was secured. Joiner Decl., docket no. 83, ¶ 13.

---

[2] A valid daycare license is a prerequisite to a City of Auburn business license. A valid business license is required to operate a business at a new location.

[3] By letter dated April 30, 2004, DSHS had notified Mr. Pogacsas that he was disqualified from working in any capacity in any licensed child care facility. Tomisser Decl., docket no. 87, Ex. C. The 2004 letter stated, as a basis for the action, "physically assaulting a person." Id. Plaintiffs dispute the 2004 letter was ever served on Mr. Pogacsas. Plaintiffs' Response, docket no. 143 at 2. This factual dispute is not material to the issues presented in these related motions. It is undisputed Diana Pogacsas had agreed in writing in April 2004 that Mr. Pogacsas would not be on the daycare premises when it was operating. Tommisser Decl., docket no. 87, Ex. D, pg. 19.

ORDER 3–

On April 18, 2006, the Department of Early Learning, a division of DSHS suspended Ms. Pogacsas' daycare license citing various reasons. The suspension was effective upon receipt of the letter. Tomisser Decl., Ex. E. ("Suspension Letter"), at 20-21.[4] The Suspension Letter included information about how to request a hearing to contest the decision and how to request a stay of the suspension. Id. at 21-22. The Suspension Letter noted the action was taken "because it finds that your family child care home constitutes a threat to the public health, safety, and welfare." Id. Ms. Pogacsas does not dispute receipt of the Suspension Letter.

Ms. Pogacsas' daycare license was revoked by letter dated July 14, 2006. Tomisser Decl., docket no. 87, Ex. A ("Revocation Letter") at 4. The Revocation Letter listed twelve complaints that had been lodged against Ms. Pogacsas' daycare, six of which had been found to "have had valid findings or persistent licensing violations." Id. This letter also included information about how to contest the decision by requesting an administrative hearing, and how to request a stay of the action. Id. at 9-10. Ms. Pogacsas appealed the revocation of her license and a hearing was held, but to date no decision has issued.

This matter comes before the Court on cross-motions for summary judgment. Plaintiffs seek a declaration that the Revised Code of Washington and the Washington Administrative Code sections that govern child care, RCW 74.15 et seq. and WAC 388-296 et seq., are unconstitutional.[5] Plaintiffs challenge the statutes and code sections facially and as applied. The State Defendants move for summary judgment and ask that the Court hold that the statute and code sections are constitutional on their face and as applied and seek to dismiss all claims by the Daycare Plaintiffs against the State Defendants.

---

[4] The suspension letter stated in part that Mr. Pogacsas's presence at the home violated various WAC provisions.

[5] All references to RCW and WAC sections are references to the rules in force at the time of the license revocation. Some of these rules have been subsequently recodified elsewhere. The parties agree that RCW 74.15 was applicable to daycare licensing enforcement actions at issue here.

ORDER 4–

# DISCUSSION

A facial challenge is a question of law to be decided by the court. U.S. v. Bynum, 327 F.3d 986, 990 (9th Cir. 2003). Documents that seek to establish facts must be authenticated and attached to an affidavit that meets the requirements of Rule 56(e). Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). Documents that are not authenticated cannot be considered on a motion for summary judgment. Id.[6] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a properly supported motion for summary judgment has been presented, the adverse party may not rest upon the mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). The adverse party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Conclusory or speculative affidavits are not sufficient to raise a genuine issue of material fact. Soremekun v. Thrifty Payless, 509 F.3d 978, 984 (9th Cir. 2007); Thornhill Pub. Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

Plaintiffs challenge the daycare licensing statutes and regulations on the basis that they violate Plaintiffs' liberty, privacy, rights of association, property, and due process rights. Diana Pogacsas is challenging the statutes and regulations facially and as applied to the revocation of her daycare license.

### 1. Constitutionality of the Licensing Laws and Regulations

Ms. Pogacsas claims that her daycare license was a property interest that was revoked without due process of law. In a due process challenge, the court must ascertain whether there is a property interest at stake, and if so, what process is due before deprivation. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).

---

[6] Many of the facts Plaintiff recites in various briefs are not supported by any sources of evidence and cannot be relied upon at summary judgment.

ORDER 5–

### a. Daycare License as a property right

Washington State Law determines whether Plaintiff had a property interest in the daycare license. The State Legislature in Chapter 74.15 RCW has declared "that no person or agency has the right to be licensed under this chapter to provide care for children." 1995 Wash. Session Laws ch. 302 § 1. The State makes a strong argument that Plaintiff has no property interest in the daycare license issued by the State and thus no due process claim. However, the Court need not resolve this issue. Even assuming a property interest in the daycare license, Plaintiff Pogacsas was not deprived of the daycare license without due process.

### b. Pre-deprivation Hearing

Plaintiff Pogacsas claims she was deprived of her daycare license in violation of her procedural rights of due process. Washington law provides Plaintiff with a procedure for obtaining a stay of a suspension or revocation of a license. RCW 43.20A.205(4); RCW 34.05.550. Plaintiff was advised of these rights in the Suspension Letter and the Revocation Letter and never sought a stay of the proposed action.

To satisfy due process, the State remedy need not provide a plaintiff with all the relief available under 42 U.S.C. § 1983 as long as it would fully compensate his or her property loss. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981) (overruled on other grounds); Daniels v. Williams, 474 U.S. 327 (1986). Washington law affords a post-deprivation tort remedy that would fully compensate Plaintiff for any property loss. In Joshua v. Newell, 871 F.2d 884 (9th Cir. 1989), the Court, applying Washington law in connection with a foster care license, held that deprivation of a property interest does not violate due process when a pre-deprivation hearing is not practicable and state law provides an adequate post-deprivation remedy.

Plaintiffs' reliance on Chalkboard v. Brandt, 902 F.2d 1375 (9th Cir. 1989), is misplaced. Chalkboard involved an Arizona statute which prohibited the summary

ORDER 6–

suspension of a daycare license and required a pre-deprivation opportunity. In contrast, Washington law expressly authorizes summary suspension. RCW 43.20A.205(2)(b). In addition, Washington law provides a procedure for requesting a stay, which is available but not required. Plaintiff did not take advantage of this opportunity and cannot now claim a due process violation.

Washington State has a strong interest in the protection of its children in childcare facilities. The Legislature has made the following declaration of purpose concerning RCW 74.15 and RCW 74.13.031, in part, as follows:

(1) To safeguard the health, safety, and well-being of children, expectant mothers and developmentally disabled persons receiving care away from their own homes, which is paramount over the right of any person to provide care;
. . .

(5) To license agencies as defined in RCW 74.15.020 and to assure the users of such agencies, their parents, the community at large and the agencies themselves that adequate minimum standards are maintained by all agencies caring for children, expectant mothers and developmentally disabled persons.

RCW 74.15.010

In this case, Washington has provided Plaintiff with a procedure for obtaining a stay or suspension order.[7] Washington also provides a post-deprivation procedure to challenge the revocation of daycare licenses. These procedures provided Plaintiff with any due process required by law. As a result, the State Defendants are entitled to summary judgment dismissing Plaintiff Pogacsas's claim under 42 U.S.C. § 1983.[8]

---

[7] Under Washington law, when a daycare license is suspended or revoked, notice of less than twenty-eight days is allowed when "necessary to protect the public health, safety, or welfare." RCW 43.20A.205(2)(b). If such a shortened notice period is given, the adverse action takes effect upon the date given in the notice even if it is less than twenty-eight days.

"If the department gives a licensee less than twenty-eight days notice of revocation, suspension, or modification and the licensee timely files a sufficient appeal, the department may implement the adverse action on the effective date stated in the notice. The presiding or reviewing officer may order the department to stay implementation of part or all of the adverse action while the proceedings are pending if staying implementation is in the public interest or for other good cause." RCW 43.20A.205(4)(b).

[8] The individual State Defendant is also entitled to qualified immunity as a matter of law.

ORDER  7–

### c. Other Daycare Plaintiffs' Claims

The Daycare Plaintiffs also bring claims under § 1983 relating to the suspension and revocation of the daycare license. These parents and children claim a loss of a liberty interest in the right to teach, and a loss of a right to associate. These claims are without merit. The suspension and revocation of the daycare license did not prevent contact between the daycare provider and the children and did not prevent parental decisions in child-rearing. The suspension and revocation did not implicate a constitutional liberty interest of the affected parents or daycare provider as a matter of law. The fact that some of Ms. Pogacsas's customers were pleased with her daycare services does not elevate the relationship of daycare operator and client to a constitutional magnitude.

In addition, the relationship between a daycare provider and the children cared for does not give rise to a right of association protected by the due process clause.[9]

"The factors relevant in determining whether a particular association can claim the protection of the due process clause are the group's size, its congeniality, its duration, the purposes for which it was formed, and the selectivity in choosing participants." IDK, Inc. v. Clark County, 836 F.2d 1185, 1193 (9th Cir. 1988). In IDK, the Court held that the relationship between a paid escort and a patron was not entitled to the protections under the right to associate as might be the case between people who engaged in the same sort of dating activity without the financial relationship. See IDK, Inc., 836 F.2d at 1193. This same analysis differentiates the daycare provider-child relationship from a parent-child relationship because of the underlying financial purpose for the relationship. The Court holds that the economic purpose of the daycare relationship precludes a holding that the daycare provider-child relationship is a constitutionally protected association.

---

[9]Although Plaintiffs also alleged their First Amendment right to expressive association was violated by the revocation of Diana Pogacsas's daycare license, Plaintiffs do not address the claim in their responsive pleadings. Failure to respond is considered by the Court as an admission that the State's position is correct. LR 7(b)(2).

ORDER  8–

### d. Delegation of Power

Plaintiffs challenge the delegation of authority from the Legislature to the DSHS. Delegation of power from the Washington State legislature to State agencies is governed by the Washington Administrative Procedures Act ("APA"). RCW 34.05 et seq. Where the Legislature has specifically delegated rulemaking authority to an administrator, the regulations are presumed valid and the challenger bears the burden of overcoming this presumption. St. Francis Extended Health Care v. Dep't of Soc. & Health Servs., 115 Wn.2d 690 (1990). The DSHS rules regarding daycares are promulgated under just such specific authority. RCW 74.15.030. Legislative power is appropriately delegated if two requirements are met: (1) the legislature has provided standards or guidelines which define in general terms what is to be done and the administrative body that is to accomplish it, and (2) procedural safeguards exists to prevent arbitrary administrative action. State v. Simmons, 152 Wn.2d 450, 455 (2004). Plaintiffs assert that because the legislature declined to define "care" or "supervision," the delegation was not sufficiently clear to be a valid transfer of rule-making authority.[10]

RCW 74.15.030 delegates to DSHS the power to set minimum standards for licensing child care agencies. This section limits the minimum standards to include, inter alia, "the provision of necessary care, including food, clothing, supervision and discipline." Id. The statute provides general guidelines as to what constitutes "care." The word "supervision" has sufficiently clear meaning by itself to indicate in general terms what activity is being regulated. The Court holds that the delegation of power to the Secretary was proper.

---

[10]The grounds for revoking a daycare license are set forth in WAC 388-296-0450-0460. The State alleged numerous health and safety violations and specifically referred to WAC provisions. Plaintiff's challenge is not that she did not understand the reasons for the revocation. Rather, Plaintiffs contend the State wrongfully revoked the license. These contentions will be resolved in the pending Administrative Proceedings and are not grounds to attack the statutes or regulations governing daycare providers.

ORDER 9–

### e. Rule 56(f) Issues

The State's Motion for Summary Judgment, docket no. 86, was originally filed on December 6, 2007. Plaintiffs' Motion for Declaratory Judgment, docket no. 158, was filed on March 27, 2008. Since the filing of these motions the parties have had substantial time to brief the issues presented and provide any supplemental materials relevant to the issues presented. The challenge to the constitutionality of the statutes and WAC provisions is essentially a legal question. Plaintiffs have made no showing of facts believed to exist that would create a material issue of fact. There is no good reason to delay a decision.[11]

IT IS SO ORDERED.

DATED this 23rd day of September, 2008.

Thomas S. Zilly
United States District Judge

---

[11] The Court notes that although Plaintiffs suggest in their Motion for Declaratory Judgment, docket no. 158, filed on March 7, 2008, that the State's Motion was "[P]remature as they are and subject to a Fed. R. Civ. P. 56(f) objection," no formal motion under Rule 56(f) was filed by Plaintiffs relating to the issues covered by this Order.

ORDER 10–